Our next case for argument this morning is Appeal Number 25-2735, F. F. v. Valley View Community Unit School District, Number 36. Good morning, Mr. Gupta. Good morning, Your Honor. May it please the Court? Ajay Gupta for the named plaintiff, F. F., and the proposed class. I would like to reserve two minutes for rebuttal. Okay. You can watch your time. This appeal turns on a single legal error. The district court denied preliminary relief on the premise that a single student with a self-declared gender preference can demand and receive access to the school's sex-segregated intimate spaces without any objective criteria. Without any medical documentation. Without even consistent gender expression. That premise is wrong, and therefore the denial of preliminary relief cannot stand. Can I clarify, please, what relief you are seeking? Are you asking us to find that the policy violates Title IX and equal protection and they shouldn't have this policy at all? Or are you asking us to find that if the policy exists, they have to impose objective criteria or other ways to measure these individuals who want to come into the bathroom? Yes, absolutely, Your Honor. That was an either-or. It's the latter. It's the latter. Okay. Our ask to this court is very minimal. We are asking the court to reverse and demand so that the district court apply the proper legal framework instead of treating a label as dispositive. But at the very minimum, we're asking the court to reverse with instructions for limited fact-finding. That's our ask to this court. So, as I was saying, the district court did not apply heightened scrutiny. It did not require objective criteria. It did not weigh evidence. Instead, it treated a label as dispositive, concluding that once a student is called, quote, transgender, unquote, then the school's sex-segregated intimate spaces will be available to that student. And there can be no sex-based classification, and therefore there can be no constitutional or statutory violation. That error infected the district court's analysis throughout. It foreclosed a finding of irreparable harm. It skewed the balancing of public interest, and therefore we're asking, as I said, that this court reverse and demand so the district court apply the proper legal framework or, at the very minimum, conduct limited fact-finding. The reason for limited fact-finding is even more important now, because after we filed our notice of appeal and after we filed our opening brief, the district court has stayed all discovery. Mr. Gupta, how do you get around Whitaker? Your Honor, neither Whitaker nor Martensville says that a self-declared gender preference by itself is enough. In fact, no decision of this court says that a self-declared gender preference by itself will allow cross-sex access. In fact, both Whitaker and Martensville were decided against the backdrop of the legitimacy of sex-segregated intimate spaces. And so Whitaker and Martensville went to great lengths to demonstrate that the gender expression and gender identity were enduring, were supported by a development of the factual record, were accompanied by medical documentation, and came with safeguards. But didn't we deal with that in DP versus Mukwango area school district? Your Honor, this court has vacated Mukwango, and the case is dismissed, and it's no longer good law. Okay, but let me ask you a question regarding that. But I'm not asking you about the holding in that case. I'm asking you about what we said in that case regarding Whitaker and Martensville. Because in that case, we said our decisions in Whitaker and Martensville did not turn on the plaintiff's ages, hormone treatments, or medical conditions. Nonetheless, they did turn on enduring gender identity. It cannot possibly be the case that a simple self-declared preference without any objective criteria suffices to grant cross-sex access. Otherwise, Martensville and Whitaker would have repudiated sex-segregated intimate spaces. To the contrary, both Martensville and Whitaker acknowledged the legitimacy of sex-segregated intimate spaces. When you think about it, why else would the transgender students in those cases have been granted access to female-only spaces? How does this discriminate on the basis of sex when it applies equally to all students? So students who identify with being male could go in the male bathroom. Students who identify with being female could go in the female bathroom. It's equal across the board. So, Your Honor, as I was saying, any student can demand and receive access to the other sex's sex-segregated intimate spaces. Right. That's my question. Here, the record shows that female students have to accept this result. The entire burden of accommodation has been transferred onto the female students. Nonetheless, if you think about it, cross-sex access will always be based on demanding and receiving access to the other sex's sex-segregated intimate space. Can you explain what you just said? The entire burden is on female students. That's the part I don't understand about your argument. So in this case, the facts as developed show that it was a biological male student who presented himself as a biological male, was granted access to the girls' restroom. I understand the facts of this case, but couldn't you also end up representing a male student who alleges the same harm that FF does in the inverse? Yes, for sure. You would be making the same argument using the same law. So how is the burden falling solely on female students by virtue of this policy? Your Honor, in this case, the facts show that the burden was falling entirely on female students. It is entirely possible for a policy to discriminate against males and females, both on the basis of sex. If cross-sex access is being granted without any objective verification, then almost by definition, that is on the basis of sex. Cross-sex, by definition, is on the basis of sex. But doesn't that just go to the categorization that it's on the basis of sex? It's the discriminatory part, that it applies equally. Absolutely, Your Honor. Once we have acknowledged the legitimacy of sex-segregated spaces, then any invasion of those sex-segregated spaces is discrimination. In fact, Title IX, both the statutory provision and the regulations, the implementing regulations, acknowledge the desirability of sex-segregated spaces, but then go on to say that those sex-segregated spaces should be comparable. If a policy is compromising the very segregation, then that is discrimination. And so, as I said, here the fact and the record show that this is a discrimination on the biological females. But in theory, it is entirely possible to have discrimination against males as well. But again, that would be on the basis of sex. I have a different question because you also argue that the student FF saw in the bathroom wore male-typical clothing and didn't outwardly present any signs of female identity. How do you square your arguments with precedent that forbids sex stereotyping? Your Honor, for sex-segregated spaces to be meaningful, they have to be limited to that sex. So there has to be some objective indicia of enduring gender identity. The underbodied declaration here of the named plaintiff is that the male student that she encountered presented himself as male. There was no rebuttal to that declaration. So, as far as we see, there is no objective criteria of any enduring gender identity. Simply demanding access and receiving access to the girls' sex-segregated intimate spaces, again, I say is... So I think I may understand your answer. Is your answer that it's not sex stereotyping in contravention of Supreme Court precedent because FF is saying, I'm looking at objective criteria? No, what we are saying is that the school has not articulated any objective criteria that they rely on before they grant access. Best we can tell is that it is granted on demand. So what we are saying, and what I asked before... But your argument boils down to, your argument is that Title IX and the Equal Protection Clause require sex segregation. No. Our argument is that both of them contemplate sex segregation. They acknowledge the legitimacy of sex segregation. Once we begin with that backdrop, once we begin by acknowledging the legitimacy of sex-segregated spaces, then that access has to be free of discrimination on the basis of sex. Sex-segregated spaces should be comparable. And their segregation cannot be compromised simply on a wing. That is our argument. And here, the district court, as I said, simply treated the term transgender as dispositive. And once it treated the term as dispositive, it did not engage in any fact-finding. It did not engage in any analysis. And that error infected the remainder of the preliminary relief analysis. So we would ask the court to reverse, to remand, and at a minimum, ask the district court to conduct some limited fact-finding so that the term transgender is not stripped of all meaning. As I said, I'm reserving the remainder of my time. Thank you. Ms. Proctor. Good morning. Good morning. The plaintiff is a 17, now 18-year-old female student enrolled in Bolingbrook High School. Bolingbrook High School is part of the Valley View Community Unit School District 365U. Plaintiff is challenging the constitutionality of the district's policy of allowing transgender female students access to female-only spaces, including restrooms, without any objective assessment of gender dysphoria or subjective manifestation of female identity. There is absolutely no legal authority to support that position. And in fact, the decisions of this court in both Whitaker and Martinsville say just the opposite. Valley View's policy is inclusive. It's consistent with state and federal law, which allows transgender students, both transgender female and male, access to restrooms aligning with their gender identity, and it provides alternative facilities for individuals like FF with privacy concerns. The policy is gender neutral. The legal standard for issuing a preliminary injunction, which is why we're here today, plaintiff is challenging the district court's denial of the preliminary injunction. It's an extraordinary remedy, and such a remedy is not justified in the case before this court. It's the defense position that the district court properly denied the plaintiff's motion for preliminary injunction because the plaintiff failed to meet her burden, which is a three-part burden. First, she must establish likelihood of success on the merits. Two, no irreparable harm in the absence of the preliminary injunction. And three, no adequate remedy at law. The law in this circuit is clear. If the moving party fails to demonstrate any one of those three threshold requirements, a court must deny the motion for preliminary injunction, and that's exactly what Judge Coleman did in the district court in this case. Plaintiff did not satisfy any of the three elements. I'd like to focus now on the likelihood of success on the merits element, which I think is the core, really, element of this matter. Plaintiff's claims in this case are based on equal protection. She's claiming a violation of equal protection under the 14th Amendment as well as a violation of Title IX. First and foremost, the district's policy does not include any sex-based classification. It's gender neutral. Plaintiff's argument that the district policy to accommodate transgender female students in spaces previously reserved for the exclusive use of female students qualifies as sex discrimination is simply wrong. There is absolutely no support for this position as a matter of fact and law. And we believe the district court correctly determined that the district's policy does not discriminate on the basis of sex and does not treat students unequally on the basis of sex. In fact, it's undisputed that the policy applies to all students, and they're permitted, regardless of gender, they're permitted access to facilities that align with their gender identity. I think what the plaintiff is claiming in this case, and some of the questions from plaintiff's argument bear on that, is I think what they're claiming is that there ought to be some kind of objective assessment of a student's gender identity. And this court has held that requiring such objective assessments is not required under the law. The argument that the policy, that because this is a girls' bathroom, plaintiff's argument that this is a female-only space and that under Title IX that somehow violates Title IX, here what we have is we have a girls' bathroom and it is not, there's nothing in the law, and in fact there's nothing under the language of Title IX that requires for there to be single segregated space. So let me ask you a question about that. Yes. So what you're saying is under Title IX and under the Equal Protection Clause, schools, elementary schools, high schools, whatever, they can say that boys and girls can use the bathrooms and locker rooms of their choice? Yes. And the Title IX Equal Protection Clause does not apply in any way to that? That's correct, as long as the policy is applied equally to all students, and the undisputed facts in this case demonstrate that. Plaintiffs? You said a moment ago that our law has said you don't need an objective assessment. Do you have a case site for that? Well, I will say that if you give me a minute, I'll look my notes, just check my notes on the objective criteria. What the defense is referring to is that the decision on how to handle these kinds of requests, access, requests made by students, that under Martinsville and Whitaker, in those cases, our reading of those cases is that the court declined to require that transgender access be granted based on objective criteria, and in fact in Martinsville But they did have objective criteria in those. But the difference in Whitaker and Martinsville is those policies were exclusive policies. The policies were excluded. I understand that, but it's the objective criteria point. I'm trying to figure out what you're relying on, because you said earlier, our law has said you don't need objective criteria for gender identity issues, and I'm not sure that we have said it that explicitly. So you said we have. Where have we said that? I don't see that in Martinsville or Whitaker. Well, perhaps the best way to address that is by rephrasing it, in that to require the district to create a list of objective criteria that basically would put the school district in a position and put them at risk of violating transgender students' rights. And I believe it's under Martinsville that left the door open to schools to develop some requirements but didn't set any type of a floor, and it left that to the discretion and the judgment of the schools. But we have never said no objective requirement. That is correct, Your Honor. That is correct. And plaintiffs' reliance on Whitaker and Martinsville is misplaced, and those cases are distinguishable because in both those cases, the schools had exclusive policies that treated students differently based on their transgender status, and the students were forced to use specific areas determined through sex-based stereotyping. And that's not what we have here. Here, bathroom access at Bolingbrook High School is inclusive, equal across the entire student body. All students can access the bathrooms that align with their gender identity without requiring any objective proof of that. In this case, plaintiff is not barred from accessing the restroom that aligns with her gender identity and neither is any other student. So without discrimination or unequal treatment on the basis of sex, plaintiff cannot succeed on her underlying claims. So this really goes to the first element of the preliminary injunction analysis. Did plaintiff demonstrate that there is a likelihood of success on the merits? We believe the district court correctly ruled and answered that question no, and that was the correct ruling. The other elements, so really you don't even get to the other elements, but should the court disagree, I'd like to address the remaining elements, which are that the plaintiff failed to make any showing of irreparable harm. And in this case, really we have one incident, an isolated incident on November 4th of 2024, where the plaintiff, after changing in the restroom, comes out of the restroom, which by the way, to be clear, this is a restroom that has private stalls, bathroom stalls that I think we're all commonly familiar with. And she comes out of the stall and sees this person, and then she becomes alarmed that this person may have seen her changing or may have looked through the tiny little openings in the bathroom stall door and may have seen her naked. I mean, that was a one-off event. There has been no other incident like that. And at the time we argued the preliminary injunction in September of 2025, that was almost a year later, plaintiff presented affidavits in opposition to the motion for preliminary injunction, and she did not report any other incidents like that, either with this student or another transgender student. Although isn't her position that it's because she has now started avoiding bathrooms, and she reports that other students are expressing similar apprehension of having incidents like she says she had on the 4th of November? Well, that goes to the conduct has to be reasonable here, and perhaps we can characterize that as emotional distress and not wanting to use girls' bathrooms because of the fear of encountering someone, but she's continuing to use the girls' bathrooms, and there haven't been any other encounters. And this really, in terms of the irreparable harm analysis, unless that cannot be adequately addressed and somehow a harm if the case moves forward, that that harm or the remedy for that harm would be seriously deficient, then the plaintiff has not made a showing of irreparable harm. And the general privacy concerns here, plaintiff's claim to address your question more specifically, plaintiff's claim that she felt fear and anxiety at the thought of encountering a transgender person in the bathroom, without more does not demonstrate irreparable harm. This court has recognized in Whittaker and Martensville that generalized privacy concerns are not enough to constitute irreparable harm. And a student in this case seeking more privacy is accommodated at Valley View School District, and the facts are undisputed that the district went to great lengths to accommodate FF. They increased the privacy within the women's bathrooms by installing these privacy blinders on the single stall openings on the sides of the door. The district offered plaintiff access to private bathrooms across the campus. They even offered her a key so she could access those bathrooms. What about her allegation, though, that she was declined that access? Well, she filed a supplemental affidavit which admitted that when she went to ask the librarian for the key, that it took too long, and she grew impatient and left. So we don't think that amounts to a denial of access. It just took longer than the plaintiff cared to wait. But there were other keys and other options available to the plaintiff. In this case, I would be remiss if I, well, I'm running short on time, so I'll go ahead and just conclude, but we were following the state law and guidance in this area, and that's cited in our briefs. In conclusion, Valley View respectfully asks that this court affirm the district court's order denying the motion for preliminary injunction, and we thank you for your time and attention to this most important matter. Thank you, Ms. Proctor. Mr. Gupta, you have about two minutes left. Thank you, Honor. So the defense continues to do what we believe the district court did, which is to beg the question. They keep saying transgender. But, Mr. Gupta, I think what they're saying is that this case has nothing to do with the Equal Protection Clause or Title IX. I think their position is very basic. The school can have a policy that says the boys can use the girls' bathroom, the girls can use the boys' bathroom. As long as it's gender neutral, Title IX and the Equal Protection Clause have no role to play. With all respect, Your Honor, we disagree. Tell me why. What's your response? Because Title IX, the statutory provision, 20 U.S.C. 1686, and the Code of Federal Regulations, 34 CFR 106.33, both contemplate sex-segregated spaces and say once you have sex-segregated spaces, they have to be comparable. Okay, so she's saying they are comparable. That's what I'm trying to get at. She's saying that Title IX and the Equal Protection Clause have nothing to do with this because they just have bathrooms. The boys can use the girls' bathroom or the girls can use the boys' bathroom. We can debate whether that's a wise policy. No, Your Honor, with all due respect, if you are not even segregating, you are completely negating a sex-segregated space. At a minimum, a sex-segregated space— But those laws, what you're saying is those laws require sex-segregated spaces. Those laws contemplate sex-segregated spaces. But do they require them? Once you have a sex-segregated space, it has to segregate. You can't have a sex-segregated space— What case says that? Your Honor, both Martensville and Whitaker went to great lengths to say, I'm going to quote, 858 F. 3rd. 1050. This is not a case where a student has merely announced that he is a different gender. Both Martensville and Whitaker went to great lengths to say, you can't simply rely on what's on the birth certificate. You have to look at something beyond that. You have to look at the social construct. We're simply asking that the term transgender be given some meaning. You can't simply bandy that about. We understand, Mr. Gupta. Thank you. Thank you, Your Honor. Thanks to both counsel. The court will take the case under advisory.